NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1091

JOSEPH V. KAPUSTA,

Plaintiff-Appellant,

v.

GALE CORPORATION,

Defendant-Appellee.

_____

DECIDED: November 15, 2005

_____

Before LOURIE, LINN, and PROST, Circuit Judges.

LOURIE, Circuit Judge.

Joseph V. Kapusta ("Kapusta") appeals from the decision of the United States District Court for the Eastern District of California granting summary judgment of noninfringement of U.S. Patent 6,043,663 in favor of Gale Corporation ("Gale"). Kapusta v. Gale Corp., No. 03-CV-1232 (E.D. Cal. Nov. 2, 2004) ("Judgment"). Because the district court erred in its claim construction, we vacate and remand.

## BACKGROUND

The '663 patent is entitled "Coaxial Cable Test Instruments," and was issued to Joseph V. Kapusta. The invention relates to a continuity testing

instrument for coaxial cables that provides a signal to indicate the malfunction of any installed coaxial cable component of a television network. The tester instrument consists of circuitry that is contained in a hand-grip size case. The circuit within the hand-grip size case is connected to a coaxial cable through a connector so that an operator can quickly and reliably check a cable component malfunction.

Claim 1, one of two independent claims of the '663 patent, reads as follows:

> A portable test instrument for coaxial cable which comprises:
> a test circuit comprising, in series, a battery, a device capable of generating a signal in response to completion of said circuit, a first probe and a second probe, wherein said first probe and said second probe comprise a central conductor and surrounding sheild [sic], respectively, of a test circuit connector which is releasably connectable to a coaxial cable connector mounted on a first end of the coaxial cable to be tested, such that a short circuit in the coaxial cable to be tested will complete said test circuit and cause said signal device to generate a signal; and
> a hand-grip size case in which said test circuit is mounted, wherein said test circuit connector is mounted on the outside of said case.

'663 patent, col. 8, ll. 13-29 (emphasis added). Claim 2 depends from claim 1, and it includes the limitation of having the battery mounted in the case. Claim 3, the other independent claim of the '633 patent, includes a second test circuit, which contains a second connector mounted on the second end of the coaxial cable to be tested.

On June 14, 2002, Kapusta filed suit against Gale for infringement of claims 1-3 of the '633 patent. Kapusta filed a motion for summary judgment asserting that Gale's Pocket Toner Products, PT-1, PT-2, and PT-6 (collectively "Gale's Products") infringed the '663 patent. The district court held a claim

construction hearing on June 29, 2004 and, at the close of the hearing, the court requested that Gale prepare a proposed claim construction order. Gale submitted a proposed order, which the court then adopted. Kapusta v. Gale, No. 03-CV-1232 (E.D. Cal. Aug. 5, 2004) ("Claim Construction Order").

The district court construed the only disputed claim term, "hand-grip size case," to require lower size limits that are "no smaller than the width of an adult palm, so that it can be grasped firmly in one's hand; no smaller than 1 inch in width; and of a rectangular shape." Claim Construction Order, at 6. In construing "hand-grip size case," the court found the term to be ambiguous because of its uncertain size and shape. The court observed that the specification and the prosecution history do not define the term. Id., at 5. The only place in the patent that articulates the meaning of the term "hand-grip size case," according to the court, is "the one preferred embodiment described in the specifications and shown in the drawings, namely a one inch by two inch by three inch rectangular 'project box.'" Id.

After finding the claim term to be ambiguous, the district court determined that, in light of the prior art presented during litigation, the term "hand-grip size case" must be construed narrowly to sustain the patent's validity. Id. From the extrinsic evidence presented at the Markman hearing, the court found that "the term 'hand-grip' cannot be construed so broadly as to encompass test devices contained in pocket-size cases." Id.

Based on the court's claim construction, both parties stipulated that Gale's Products did not infringe claims 1-3 of the '663 patent because the court's

interpretation of "hand-grip size case" included limitations that were not possessed by Gale's Products. Judgment, at 2. The court then entered judgment of noninfringement. Id.

Kapusta timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Claim construction is an issue of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), that we review de novo, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). In interpreting claims, a court's primary focus should be on the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. See Phillips v. AWH Corp., 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (en banc).

Kapusta asserts that the district court erred in construing the claim term "hand-grip size case" to require the limitations that the case be "no smaller than the width of an adult palm, so that it can be grasped firmly in one's hand, no smaller than 1 inch in width, and of a rectangular shape." Kapusta contends that the court should have given the term its ordinary and customary meaning of "a case that is suited to a grip by the hand," and the court should not have added limitations for which there is no support in the intrinsic record. With respect to the "of a rectangular shape" limitation, Kapusta argues that the district court imported a limitation from the preferred embodiment of the specification into the claims. Furthermore, Kapusta argues that the district court erred by finding the

05-1091                                    - 4 -

term at issue to be ambiguous and then importing unnecessary limitations in order to preserve the patent's validity.

Gale counters that the added definitions of the term "hand-grip size case" are in the specification. Specifically, the figures portray the case to be of hand-grip size and of a rectangular shape. Furthermore, the specification notes that the case has a "top wall," which suggests a rectangular-shaped case. Gale also argues that the extrinsic evidence, including two prior art references introduced during litigation and expert testimony, disclose that a hand-grip size case does not encompass all portable devices smaller than Kapusta's device. According to Gale, the term at issue is ambiguous because it has an expansive meaning subject to different interpretations and thus, in light of the prior art introduced during litigation, it must be construed narrowly to preserve its validity.

We agree with Kapusta that the district court erred in its claim construction by including extraneous limitations. The court should have given the term "hand-grip size case" its ordinary and customary meaning. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (explaining that unless the intrinsic evidence compels a contrary result, a claim term should be given its ordinary and customary meaning). The ordinary and customary meaning of "hand-grip size case" is a case of a size that can be gripped in a normal hand. We see no reason to depart from that ordinary and customary meaning or to add dimensions to the term, as there is no support for the district court's limitations in the intrinsic record.

Starting with the claim language itself, we see no evidence from this source to support the court's size limitations. The claim states that the test circuit is mounted in "a hand-grip size case," implying that the case is capable of being gripped in the hand of a normal person, and not of a size with specific dimensions. The straightforward mechanical technology of the invention and the understandable claim language give that meaning to this term. See Phillips, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). "Hand-grip" means what it says, i.e., capable of being gripped by the normal hand. The claim language does not imply a departure from that meaning.

The specification also does not suggest any reason to deviate from the ordinary and customary meaning by imparting dimensions to the term. The specification consistently refers to the instrument as serving "in the hands of an operator." '663 patent, col. 1, II. 63-65, col. 2, II. 34-36. However, nowhere does the specification explicitly or implicitly ascribe numerical limitations to the case embodying the instrument. In fact, when mentioning the hand-grip size case, the specification states only that the case is "of preferred hand-grip size," suggesting that the dimensions of the case being of hand-grip size, while preferred, are not inflexible. The specification further mentions that the operator will "grasp the primary instrument," yet that description does not suggest any specific numerical dimensions of the case. '663 patent, col. 6, II. 22-25. In the few instances where

05-1091                                    - 6 -

the specification alludes to either the "hand-grip size case" or to grasping the instrument, it does not reference any dimensions. Because numerical dimensions are absent in the specification, it was improper for the district court to construe the claim term with the lower limit dimensions.

The district court stated that it established the size dimensions of the "hand-grip size case" from "a preferred embodiment described in the specifications and shown in the drawings . . . ." Claim Construction Order, at 5. It further appears to have determined the meaning of the "of a rectangular" shape limitation solely from figures 4-7 because that is the only place in the patent that suggests such a shape. However, we cannot accept the district court's analysis because case law is well established that, while a specification should be used to interpret the meaning of a claim, it should not be used to import unnecessary limitations into the claims. See Phillips, 415 F.3d at 1323. In particular, we have acknowledged that claims must not necessarily be restricted to those embodiments disclosed in the specification, even if a patent describes only a single embodiment. As we stated in Phillips, "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments . . . In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." Id.

Here, the district court expressly ascertained the size limitations from a preferred embodiment and improperly construed the term to incorporate those

limitations. The specification states that the figures are shown "for illustrative purposes" and thus the figures do not restrict the scope of the claims to that which is shown in the drawings. See '663 patent, col. 3, II. 66-67. The specification also states that figures 4, 5, and 6 depict "one of the featured companion test instruments," further suggesting that the scope of the claims should not be restricted exclusively to those figures. Id. at col. 5, II. 3-5. Because the specification does not indicate that the embodiment depicted in the figures is meant to be the only embodiment, and in fact implies otherwise, the claim term should not be limited to specific dimensions established from the figures.

The prosecution history also does not provide support for the addition of dimensions to the "hand-grip size case." On appeal from a rejection by the examiner, the Board of Patent Appeals and Interferences ("BPAI") rejected applicant's broad argument that the invention is distinguished over the prior art because it is "portable," but added that "there is no teaching or suggestion in [the references cited upon which the rejection was made] of a hand grip size case and therefore we will not sustain this rejection . . . ." Applicant thereafter amended claims from being only portable to incorporate the language specifying "a hand-grip size case in which said test circuit is mounted" to put the claims in condition for allowance. The BPAI implied that the invention was distinguishable over the cited prior art by the inclusion of a "hand-grip size case," but the BPAI did not ascribe any lower size dimensions to the case.

Moreover, with regard to the "of a rectangular" shape limitation, although figures 4-7 show the instrument as housed in a rectangular-shaped case, the specification never suggests that this shape is critical to the operation of the invention. An important object of the invention is to have the portable test instrument serve "in the hands of an operator." '663 patent, col. 1, ll. 61-64. There is no reason why this objective could not be accomplished equally as well with a non-rectangular shaped case. As long as the instrument can serve "in the hands of an operator," it fulfills the objective of the patent, irrespective of the specific shape of the case. The specification does not assign any significance to the shape of the case, and there is otherwise no indication in the intrinsic evidence that the invention must be limited to the rectangular shape depicted in some of the figures.

Gale further contends that in addition to the figures, the reference in the specification to securing a connector to the "top wall" of the case implies that the case is rectangular. See '663 patent, col. 5, ll. 32-34. We find this argument unpersuasive. Securing the connector on the "top wall" does not compel the use of only a rectangular shape because other shapes could include a top wall.

Finally, the court's finding that the term is ambiguous and should be construed to sustain its validity is without basis. The term "hand-grip size case" is not ambiguous. Although the term may be of a nonspecific size and shape, that does not render the claim term ambiguous. Because the term is not ambiguous, the district court should not have applied the doctrine of construing claims to preserve their validity. Construing claims to sustain their validity has

been limited to those cases in which "the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." Phillips, 415 F.3d at 1327 (quoting Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 911 (Fed. Cir. 2004)). We have not applied the doctrine broadly and have "certainly not endorsed a regime in which validity analysis is a regular component of claim construction." Phillips, 415 F.3d at 1327. This is not one of those limited cases where the term cannot be construed using other available tools. Had the district court limited its construction to the ordinary and customary meaning, it would not have had to resort to construing the claim term more narrowly to preserve its validity.

In sum, we do not accept the limitations that the district court added to the term "hand-grip size case." We see no basis for incorporating specific dimensions and a specific shape into the claim construction. Because we disagree with the court's claim construction, we vacate the district court's finding of noninfringement of the '663 patent to the extent that it was based on an erroneous claim construction of the term "hand-grip size case." That term, as indicated above, simply means a case of a size that can be gripped in a normal hand. While we might, on the basis of that meaning, make our own judgment on the question of infringement, based on the record, the better practice is to have the district court make that factual determination on remand. We therefore remand for the court to redetermine whether Gale's Products meet the limitation as we have construed it.